Kelvin T. BROWN, a/k/a Kevin T. Brown, Appellant–Petitioner,

v.

STATE of Indiana, Appellee.

No. 49A02–9010–PC–626.

Court of Appeals of Indiana, Second District.

March 3, 1992.

Susan K. Carpenter, Public Defender, Victoria Christ, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

On October 26, 1982, Kelvin Tyrone Brown (Brown) was convicted of attempted murder and robbery. The convictions were affirmed by our Supreme Court on December 14, 1983. 457 N.E.2d 179. Brown filed a petition for post-conviction relief, which was denied on February 22, 1990. In appealing the denial of his petition, Brown addresses eight issues, which we consolidate as follows:

 I. whether the jury was inadequately instructed on the element of intent to kill as embraced within the charge of attempted murder;

 II. whether judgment and sentence were entered upon a verdict that was not unanimous;

 III. whether the trial court erred in denying Brown's request to conduct in-camera questioning of the State's confidential informant whose tip led the police to include Brown's photograph in an array from which he was first identified; and

 IV. whether Brown received ineffective assistance of trial counsel.

We vacate the attempted murder conviction and remand; in all other respects we affirm.

I.

Brown challenges the adequacy of the jury instruction on the element of intent to kill with respect to the charge of attempted murder. In order to prevail upon this issue, Brown must show not only that the instruction was erroneous, but also that the error is one that is cognizable in a petition for post-conviction relief. We first examine and characterize the alleged error.

A. *Characterization of the Error*

In *Zickefoose v. State* (1979) 270 Ind. 618, 622, 388 N.E.2d 507, 510 our Supreme Court held that specific intent is a necessary element of the crime of attempted murder. In *Smith v. State* (1984) Ind., 459 N.E.2d 355, 357–58, the court held that failure to instruct the jury on the element of specific intent in the crime of attempted murder is fundamental error. In *Abdul–Wadood v. State* (1988) Ind., 521 N.E.2d 1299, 1301, the court explained that it is error for the instructions to leave the impression that the jury may convict if it believes that the defendant intended only to engage in conduct which carries with it the risk of death without actually intending the result of death to the victim. *See also Smith, supra* at 358.

Several cases have addressed what constitutes a sufficient instruction on the element of intent to kill. In *Santana v. State* (1986) Ind., 486 N.E.2d 1010, 1011, our Supreme Court held sufficient the instruction that "1. the defendant knowingly or inten-

tionally 2. took a substantial step to accomplish 3. a *knowing or intentional killing* of another human being" (emphasis supplied). It rejected the notion that the word "knowing" failed to adequately describe the *mens rea* element of the crime of attempted murder, noting simply that the given instruction focused properly on the proscribed result. *Id. See also Worley v. State* (1986) Ind., 501 N.E.2d 406, 408.

More recently, in *Allen v. State* (1991) Ind., 575 N.E.2d 615 and its companion case, *H. Jackson v. State* (1991) Ind., 575 N.E.2d 617, the court was confronted with instructions which did not state that the defendant must "intend to kill" the victim; rather, the instructions stated that the defendant must "attempt to kill" the victim. The court concluded that these instructions were erroneous and that had defendant objected at trial the convictions would have been reversed. However, the court held that the error was not fundamental, and therefore, was waived by each defendant's failure to object. *Allen, supra* at 617, *H. Jackson, supra* at 621. The court reasoned that "by definition, there can be no 'attempt' to perform an act unless there is a simultaneous 'intent' to accomplish such act." *H. Jackson, supra,* 575 N.E.2d at 621. [1]

These cases suggest that fundamental error results 1) when the jury instructions on attempted murder completely fail to refer to the element of intent to kill; and 2) when the instructions leave the impression that intent to engage in the conduct leading to the risk of death alone is sufficient to convict on a charge of attempted murder. On the other hand, instructions which imperfectly instruct on the element of intent to kill but which do not affirmatively mislead the jury are erroneous but not fundamental error, and are therefore subject to waiver. An instruction which refers to the element of intent by stating that the defendant must "attempt to kill", rather than "intend to kill", the victim appears to be an example of an imperfect but not fundamentally erroneous instruction.

It is somewhat difficult to reconcile the newer cases with traditional concepts regarding the duty of the court to give instructions. As noted in *Rodriguez v. State* (1979) 4th Dist., 179 Ind.App. 464, 385 N.E.2d 1208, 1211, it is the duty of the trial court to correctly and completely present the applicable law to the jury so that the jurors may clearly comprehend the case. And, of course, in the seminal *Smith v.*

---

**1.** The court cited *Spradlin v. State* (1991) Ind., 569 N.E.2d 948, 951, for this proposition. Notwithstanding the fact that *Spradlin* was decided only three months prior to *H. Jackson* and was authored by the same justice, the cited language takes on an entirely new meaning as it is used in *H. Jackson.* In *Spradlin*, the jury was instructed that in order to convict on charges of attempted murder, it must find that "The defendants 1. knowingly or intentionally 2. *strike, stab and cut the body of [the victim]* 3. that the conduct was a substantial step toward the commission of the crime of murder." (Emphasis supplied); *id.* at 950. In holding the instructions inadequate for failing to advise the jury that the defendant had to intend to kill the victims when he struck, stabbed and cut them, the court reasoned that "by definition, there can be no 'attempt' to perform an act unless there is a simultaneous 'intent' to accomplish such act." *Id.* at 951. In context, the language merely states the conclusion that intent is a necessary element of the crime of attempt as it has been defined by our case-law. In contrast, the *H. Jackson* court confronted jury instructions which did not use the word "intent" in defining the elements of attempted murder. Rather, the

instructions stated only that the jury must find that the defendant "attempt to commit the crime of murder by *attempting to kill* [the victim]...." (emphasis supplied) *H. Jackson, supra* at 620. Citing the *Spradlin* language, the court concluded that "by finding that the defendant was attempting to kill [the victim] when he shot him, it was logically necessary for the jury to find that he intended to kill him." *Id.* at 621. Certainly there is a difference between the notion that specific intent is a necessary element of an attempt crime because the court has defined the crime that way by its own holdings, and the notion that specific intent is a logically necessary component of an attempt crime which the jury will discern even without instruction. The reasoning is particularly troublesome in light of the court's decision in *R. Jackson v. State* (1989) Ind., 544 N.E.2d 853. *R. Jackson* holds that the instruction "1. The defendant, Robert Jackson; 2. knowingly; 3. *attempted to kill;* 4. [the victim]" (emphasis supplied) was fundamental error under *Smith* because "the language 'knowingly attempted to kill' ... does not inform the jury of the elements of attempted murder." *Id.* at 854.

*State, supra,* 459 N.E.2d at 357, our Supreme Court observed: "When an instruction purports to set forth all of the elements of a crime necessary to a conviction, the instruction is fatally defective if a necessary element is omitted." Furthermore, it may be noted that mandates continue to exist both in the form of Indiana Supreme Court rule, and in statutes concerning the subject matter. Ind.Rules of Procedure, Criminal Rule 8(F) clearly requires that "the court *shall* instruct in writing as to the issues for trial ..." (emphasis supplied), and I.C. 35–37–2–2(5) (Burns Code Ed.Supp.1991) specifies that "In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict." [2]

■ In the instant case, the following instructions were given:

"MURDER

'A PERSON WHO (1) KNOWINGLY KILLS ANOTHER HUMAN BEING.... COMMITS MURDER, A FELONY. [T]HE ELEMENTS OF THIS CRIME ARE THAT THE DEFENDANT MUST: (1) KNOWINGLY (2) KILL (3) ANOTHER HUMAN BEING[.]' "

"ATTEMPT

A PERSON ATTEMPTS TO COMMIT A CRIME WHEN, ACTING WITH THE CULPABILITY REQUIRED FOR COMMISSION OF THE CRIME, HE ENGAGES IN CONDUCT THAT CONSTITUTES A SUBSTANTIAL STEP TOWARD COMMISSION OF THE CRIME. AN ATTEMPT TO COMMIT A CRIME IS A FELONY OR MISDEMEANOR OF THE SAME CLASS AS THE CRIME ATTEMPTED. HOWEVER, AN ATTEMPT TO COMMIT MURDER IS A CLASS A FELONY. TO CONVICT THE DEFENDANT THE STATE MUST PROVE EACH OF THE FOLLOWING ELEMENTS: The Defendant *1. Knowingly 2. Engaged in con-*

*duct* that constituted a substantial step to accomplish 3. The crime of Murder[.]" (Emphasis supplied) Trial Record at 157–58.

\* \* \* \* \* \*

"A PERSON *ENGAGES IN CONDUCT* 'KNOWINGLY' IF, *WHEN HE ENGAGES IN THE CONDUCT,* HE IS AWARE OF A HIGH PROBABILITY THAT HE IS DOING SO. YOU ARE INSTRUCTED THAT KNOWLEDGE MAY BE INFERRED FROM THE FACTS OR CIRCUMSTANCES PRESENTED IN EACH CASE." (Emphasis supplied) Trial Record at 174.

These instructions clearly and erroneously provide that the required intent is intent to engage in the conduct rather than intent to accomplish the result. Therefore, the case falls squarely within *Smith*'s fundamental error rule and is not subject to any of the court's recently imposed limitations.

**B. *Applicability to the Petition for Post–Conviction Relief***

Brown was convicted in 1981, and his conviction was affirmed by our Supreme Court in 1983. *Brown v. State* (1983) Ind., 457 N.E.2d 179. The *Smith* case was not decided until 1984. Thus, we must determine whether Brown may enjoy retroactive application of *Smith* and its progeny upon review of his petition for post-conviction relief.

■ We note initially that the State has waived its potential objections to considering this issue upon the merits. The State responded to Brown's arguments on the merits without objecting to their applicability in post-conviction proceedings. *Burris v. State* (1990) Ind., 558 N.E.2d 1067, 1070. *See Also Mickens v. State* (1991) 1st Dist. Ind.App., 579 N.E.2d 615, 617. Even were it otherwise, and had the State claimed that Brown's argument comes too late, the merits of the instructional error issue would be considered.

**2.** It may be argued that the actual message of the decision in *H. Jackson v. State, supra,* 575 N.E.2d 617, is that in cases tried after July 24, 1991, the date of the decision, failure to give a specific "intent to kill" instruction will result in reversal but that in cases tried before that date, a less specific instruction will suffice if there has been no objection.

[5] The present appeal requests us to apply retroactively the rule established in *Smith* and *Abdul–Wadood*. In this regard, we note that the post-conviction petition under review is Brown's first and that the case-law upon which he relies was published after his direct appeal. Accordingly, there is no basis to conclude that the issue has been waived by failure to present it when first available. *See Bailey v. State* (1985) Ind., 472 N.E.2d 1260, 1263. *But see Perkins v. State* (1989) Ind., 541 N.E.2d 927, 929, which held that the "unavailability" factor is irrelevant because the error alleged "is fundamental and also falls within that class of claims specifically sanctioned by Post–Conviction Remedy Rule 1, Section 1(a)1." The latter section embraces a claim that the conviction was in violation of the U.S. Constitution or the constitution or laws of Indiana. In this regard, it is interesting to note that the *Perkins* court cited *Bailey* for this proposition.[3]

In any event, we hold that retroactive application of *Smith* and *Abdul–Wadood* is indicated, if not required by *Rowley v. State* (1985) Ind., 483 N.E.2d 1078, and subsequent cases. In *Rowley*, our Supreme Court adopted federal guidelines for retroactive application. The seemingly controlling factor which led to retroactive application in *Rowley* was that the evidence there challenged was a substantial part of the State's case and had likely impact upon the verdict.

In *Daniels v. State* (1990) Ind., 561 N.E.2d 487, our Supreme Court modified somewhat the retroactivity test and in doing so relied upon *Teague v. Lane* (1989) 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334. The controlling factor emphasized in *Rowley* was embraced within the *Daniels* test but in somewhat different language. *Daniels* enunciates an exception to the general principle of non-retroactivity as follows: Retroactivity is applied when the new rule involves "procedures ... without which the likelihood of an accurate conviction is seriously diminished." *Daniels, supra*, 561 N.E.2d at 490, quoting *Teague, supra*, 109 S.Ct. at 1077.

The test is met in the case before us. The nature of the instructional error and the factual context in which it occurred here is similar to the issue as presented in *Rowley*, and as contemplated in *Teague* and *Daniels*. In applying the Indiana retroactivity test we are led to the conclusion that more probably than not, the instruction defect impacted upon the attempted murder verdict.

In this regard, our case is unlike *Daniels, supra*, in which our Supreme Court rejected retroactive application of a United States Supreme Court decision because it did not "seriously undermine the likelihood of an accurate death penalty determination...." 561 N.E.2d at 490. Here, the inadequate instruction as to the intent to kill was coupled with confusion on the part of the jury as to the applicable principles of law. This confusion was evidenced by their inquiry to the court during deliberations:

> "Does the act of pointing and firing a gun at *any part* of the body constitute 'attempted murder'?" (Original emphasis) Record at 187.

**3.** Our courts are recurrently confronted with the problems inherent in repetitive collateral attacks upon criminal convictions. The concepts of waiver, finality of judgments, and fundamental error dominate the pages of many, if not most, of our post-conviction review decisions. *See Propes v. State* (1990) Ind., 550 N.E.2d 755; *Perkins v. State* (1989) Ind., 541 N.E.2d 927; *Schiro v. State* (1989) Ind., 533 N.E.2d 1201, *cert. denied* 475 U.S. 1036, 106 S.Ct. 1247, 89 L.Ed.2d 355; *Baum v. State* (1989) Ind., 533 N.E.2d 1200; *Bailey v. State* (1985) Ind., 472 N.E.2d 1260; *Palmer v. State* (1990) 2d Dist. Ind.App., 553 N.E.2d 1256, 1259 n. 3, *vacated* in *Palmer v. State* (1990) Ind., 563 N.E.2d 601, *reinstated* and *affirmed* in *Palmer v. State* (1991) Ind., 573 N.E.2d 880; *Smith v. State* (1990) 2d Dist. Ind.App., 559 N.E.2d 338, 344; *Garner v. State* (1990) 2d Dist. Ind.App., 550 N.E.2d 1309, *trans. denied*.

A possible solution to the case-by-case problem might be the adoption of a rule or a Supreme Court holding which would, albeit somewhat arbitrarily, limit access for collateral attack to (1) a single post-conviction relief proceeding and appeal after a direct appeal; or (2) when there has been no direct appeal, a P.C. 2 proceeding and availability of one subsequent P.C. 1 proceeding and its appellate review.

Confidence which may have otherwise been placed in the accuracy of the verdict here was thus undermined.

The only remaining question is whether our Supreme Court intended that *Smith* and *Abdul–Wadood* be applied only prospectively. Neither *Smith* nor *Abdul–Wadood* state that they are to be so limited, and we are aware of no subsequent cases which do so.[4]

For the foregoing reasons Brown is entitled to retroactive application of *Smith* and *Abdul–Wadood.* Accordingly, we hold that Brown's conviction upon the attempted murder count must be reversed and as to that count, the cause remanded for further proceedings not inconsistent with this opinion.

Having reached this conclusion, we need not consider Brown's assertion of ineffective assistance of trial and appellate counsel upon this issue. Furthermore, we need consider the remaining issues only to the extent that they are relevant to the robbery conviction.[5]

## II.

Brown next challenges the unanimity of the jury's verdict. He presents the issue in two forms: whether the trial court committed fundamental error in finding the verdict to be unanimous; and whether he received ineffective assistance of appellate counsel in presenting the issue in his direct appeal.

The following facts emerge from a colloquy which took place at Brown's sentencing hearing.[6] When the jury foreman read the verdict, Brown's counsel broke into tears, was unable to compose herself, and could not look at the jury. The court asked counsel if she wanted the jury polled and she said she did. The judge then polled the jury. An attorney in the courtroom stated by affidavit that a juror did not respond affirmatively to the polling question; instead, during the polling process she shook her head in the negative. The juror later claimed by affidavit that she disagreed with the verdict and had not assented to it during the polling procedure. However, the trial judge stated that he did not detect any signs of doubt during his polling of the juror or at a post-trial meeting he held with the jury. The judge stated that the juror's only expression of ambivalence was her statement: "if only we could have heard from the family." Record at 238.

Upon direct appeal of the issue, appellate counsel failed to include the transcript of the sentencing hearing in the record submitted for appellate review. Our Supreme Court upheld the trial court's determination that the jury verdict was unanimous, stating:

"Upon the polling of the jury, the trial judge obviously did not discern a negative response from juror number one. It can also reasonably be inferred that neither did defense counsel see any dissent since no objection was lodged. We cannot say the trial court abused its discretion, or that it erroneously determined the jurors were in agreement upon their

---

**4.** The only arguable constriction of the principle of the two cases is, as noted under Part I A, found in *Allen v. State, supra,* 575 N.E.2d 615, and *H. Jackson v. State, supra,* 575 N.E.2d 617. The latter cases, however, concern construction of the particular attempted murder instruction involved and not whether an admittedly bad instruction will, by application of the doctrine of retroactivity, dictate reversal.

**5.** The parties briefed three issues which our disposition of the case renders moot; namely, 1) whether the trial court erred in handling a question which the jury sent to it regarding the attempted murder instruction; 2) whether the trial court used elements of the crime of attempted murder to enhance the attempted murder sentence; and 3) whether the court's failure to advise the jury of its duty to determine the law and the facts under Indiana Constitution article I, § 19 erroneously left the jury without adequate guidance in its deliberation of the attempted murder charge.

**6.** Brown objected to the entry of sentence at the hearing on grounds of the alleged lack of unanimity of the jury's verdict. The judge appears to have initiated the discussion from which these facts emerge at the sentencing hearing in order to "shed light upon it" for the appeal. Record at 234. At the time this discussion took place, the motion to correct errors had already been filed. Although this sequence of events contravenes the usual course of post-trial procedure, we find no reason to place determinative significance upon it.

verdict." *Brown v. State* (1983) Ind., 457 N.E.2d 179, 181.

The court concluded that the issue had been waived by defense counsel's failure to object at the time of the polling, noting "It is essential to the effective exercise of defendant's right to poll the jury that defense counsel carefully observe the response of each juror upon being asked, 'Is this your verdict?'" *Id.* at 180–81.

At the post-conviction relief hearing, the trial court held that the issue, having been decided by our Supreme Court upon direct review, was *res judicata.*[7] Brown concedes that issues raised and determined upon appeal are not available as grounds for post-conviction relief. Brown attempts, however, to distinguish his present presentation of the issue from his presentation upon direct appeal by asserting that the transcript of the sentencing hearing was not included in the record of the direct appeal. He notes that the transcript of the hearing explains that his trial counsel was too upset to poll or even look at the jury, and sheds light upon why the judge believed that the verdict was unanimous. In this manner, Brown asserts that he falls within the "additional argument" exception to the *res judicata* rule set forth in *Wilson v. State* (1990) 4th Dist. Ind.App., 565 N.E.2d 761, 765.

We note initially that *Wilson* was an ineffective assistance of counsel case. Brown has presented us with no authority marking a radical break with the case-law existing at the time of his conviction and direct appeal which would allow him to avoid the *res judicata* doctrine in his free-standing assertion of fundamental error. The transcript of the sentencing hearing was available to Brown upon his direct appeal. Brown's counsel had only to re-

quest it to have had it included in the record upon direct appeal. Our Supreme Court clearly considered and ruled upon the unanimity issue in its direct review of Brown's conviction. Thus, consideration of the unanimity issue as a free-standing issue is barred by the doctrine of *res judicata.* *Grey v. State* (1990) Ind., 553 N.E.2d 1196, 1199–1200; Ind.P–C.R. 1 § 8.

■ Brown now challenges the competency of his appellate counsel in failing to include the transcript of the sentencing hearing in the record upon direct appeal. Therefore, the question is properly presented whether Brown's appellate counsel was ineffective in presenting the unanimity issue.[8]

Ineffective assistance of counsel claims are judged by the standard set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Lawrence v. State* (1984) Ind., 464 N.E.2d 1291, 1294. The effectiveness of appellate counsel is judged by the same standard as is applied to trial counsel. *Mato v. State* (1985) Ind., 478 N.E.2d 57, 62. In order to reverse a conviction upon an ineffective assistance of counsel claim, an appellant must show: 1) that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and 2) that the deficient performance prejudiced the defense. *Strickland, supra* 104 S.Ct. at 2064. To show prejudice, a defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

Brown's claim fails because he cannot make an adequate showing of prejudice. The omitted sentencing transcript details the judge's reasons for finding the verdict

7. It may be noted that the doctrine of *res judicata* is not identical to the doctrine of the law of the case. *State v. Lewis* (1989) Ind., 543 N.E.2d 1116. The distinction is not crucial to this discussion and for purposes of simplicity we refer to *res judicata.*

8. Indiana encourages the parties to refrain from submitting to the reviewing court portions of the record which are not relevant to the issues presented upon appeal. Ind. Appellate Rule 7.2(B). Nevertheless, those portions of the

record necessary to a fair determination of the issues should obviously be submitted, and our appellate rules place the burden upon the appellant to insure that the submitted record includes all of the proceedings relevant to a determination of the issues. *Id.* Thus, appellate counsel's failure to include the transcript of the sentencing hearing in the record submitted to the Supreme Court presents the question of ineffectiveness.

unanimous, stating that he did not notice any dissent on the part of the juror during the polling procedure or afterwards at a meeting he held with the jurors. Thus, the transcript tends to undercut the argument that the verdict was not unanimous. The only reference in the transcript which was arguably helpful to appellate counsel is the judge's recognition that trial counsel was too upset to poll the jury.

We do not believe that knowledge of trial counsel's emotional condition together with the judge's own defense of the poll would have persuaded our Supreme Court to decide the issue differently than it did on its direct review. Although Brown had a right to poll the jury under I.C. 35–37–2–7 (Burns Code Ed.1985), the right may be waived. *Pritchett v. State* (1924) 195 Ind. 404, 145 N.E. 488, 490. In addition, a failure to object to a juror's dissent before the discharge of the jury waives the objection. *Myles v. State* (1955) 234 Ind. 129, 124 N.E.2d 205, 207–08, *cert. denied* 349 U.S. 932, 75 S.Ct. 776, 99 L.Ed. 1262.

In its direct review of the unanimity issue, our Supreme Court refused to consider the juror's own affidavit stating that the verdict was not her own. *Brown, supra*, 457 N.E.2d at 181. It found the attorney's affidavit to be "of no value other than to suggest that a situation arose which appellant might have used, but failed to avail himself of the opportunity." *Id.* In order to reach a contrary result, the Court would have had to conclude that trial counsel's emotional condition prevented her from waiving the issue at trial, thereby limiting the *Myles* rule. We do not believe that our law contemplates an "emotionally upset counsel" exception to the long-standing *Myles* rule. Since inclusion of the transcript in the submitted record upon direct appeal would not have affected the outcome of our Supreme Court's review, there was no prejudice, and consequently, the ineffective assistance of counsel claim fails.[9]

## III.

Brown challenges the trial court's refusal to interview a State's informant *in-camera* to determine whether he possessed exculpatory evidence. In addition to presenting the issue as a free-standing assertion of error, Brown makes an ineffective assistance of appellate counsel argument based upon appellate counsel's waiver of the issue.

Brown alleges fundamental error, but bases the error only upon due process and not upon a separate constitutional violation. Because Brown does not demonstrate that the issue was unavailable at the time of the appeal, the free-standing issue is waived. *Bailey, supra.* However, the ineffective assistance of appellate counsel argument will be addressed.

An informant gave the police Brown's name in connection with the robbery. On the basis of the tip, the police included Brown's picture in an array of photographs, from which the victim identified him. The victim also identified Brown a few months later in a line-up in which, at Brown's request, two of Brown's brothers appeared. Brown attempted to discover the identity of the State's informant, in order to question him with respect to exculpatory evidence.

A hearing was held before a separate judge in which Brown moved for *in-camera* questioning of the informant. In support of the motion, Brown argued that he was entitled to a determination as to whether the informant was reliable and, if so, to be cross-examined for exculpatory evidence since the informant's information had led to his arrest. The State, citing *Williams v. State* (1981) 275 Ind. 434, 417 N.E.2d 328, 331, responded that the credi-

---

9. Brown has not asserted upon post-conviction review, nor did he assert upon direct review, an ineffective assistance of trial counsel claim addressed to trial counsel's failure to personally poll or observe the polling of the jury. Even had he properly raised the issue, however, it would not have succeeded. It would not be feasible to require trial counsel to remain passionless at all times; indeed, a passionate lawyer often presents an effective defense of her client. Trial counsel's reliance on the trial judge's poll was reasonable under the circumstances.

bility of the informant was irrelevant since the informant merely gave the defendant's name to the police who then included a picture of the defendant in a photo array. The judge denied the motion in reliance upon *Williams.*

At trial, the State presented the investigating officer, Sergeant Combs, as a witness. During Brown's cross-examination of Combs, Brown's counsel attempted to attack his probable cause for swearing out a warrant against Brown. Counsel brought out the inconsistencies between the description of the perpetrator given by the victim after the incident and Brown's physical characteristics.[10] She then referred to the phone call from the informant in order to challenge Combs' justification and motive for putting Brown's picture in the photo array on the basis of the tip.

The controversy surrounding the informant re-surfaced at the sentencing hearing. Brown's aunt testified that the actual perpetrator of the crime was another man who was already in jail. Brown's mother corroborated the story, testifying that she had "heard on the street" that a man named Tyrone had committed the crime. Record at 219–20. Brown's father then testified that the man's name was Carpenter. Brown took the position that Carpenter was the State's informant and the actual perpetrator of the crime. The trial court sentenced Brown but ordered the State to show the victim a picture of the man named Carpenter and to settle the issue. The record does not indicate whether the State complied with the order; however, the court denied the motion to correct errors.

Brown's appellate counsel did not pursue the issue. At the post-conviction review hearing, he testified that he reviewed the record of the proceeding; however, the transcript of the hearing denying *in-camera* review was not included in the record, nor was the transcript of the sentencing hearing. Appellate counsel recalled that

he was under the impression that Brown's position was that the State did not actually have a confidential informant. He believed that Brown was attempting to use the informant issue to attack the identifications; however, he never discussed the issue with Brown.

Appellate counsel's view is consistent with the trial record because Brown did attempt to attack the identifications by showing a lack of probable cause. Nevertheless, his view does not account for the separate argument developed at the sentencing hearing which attempted to cast doubt upon his guilt by offering evidence to suggest that the man named Carpenter was the actual perpetrator of the crime. This latter theory was consistent with Brown's alibi defense and was corroborated by the inconsistencies between the victim's initial description and Brown's physical appearance. Counsel's apparent failure to review the transcript of the sentencing hearing may have led him to waive the issue without fully appreciating Brown's argument. Brown now asserts that this action amounts to ineffective assistance of appellate counsel.

Brown does not challenge the admissibility of the photograph identification which resulted from the informant's tip. Nor does he challenge the sufficiency of the evidence of his guilt in light of the matters which surfaced at the sentencing hearing or in regard to denial of his request to cross-examine the informant. Instead, he focuses upon the admission into evidence of the hearsay declaration of the informant that Brown had committed the robbery. Appellant argues that:

"[t]he State circumvented disclosure [of the informant's identity] by minimizing the informant's role before trial thus falling within the precedent of *John Williams v. State* (1981), Ind., [275 Ind. 434] 417 N.E.2d 328. However, when the State presented evidence to convict

---

10. The inconsistencies consisted in the fact that the victim's original description of the perpetrator described him as a six foot, 170–180 pound, 28–30 year old man with a heavy build and a moustache whereas Brown was 5'10", 23 years old, 155 pounds, with a medium build and a goatee. In addition, Brown had a scar upon his face and walked with a limp, facts which were not included in the victim's description.

Brown at trial, the informant's knowledge that Brown 'committed the crime,' was admitted without providing Brown with the opportunity to cross-examine the basis for that knowledge." Reply Brief at 10–11.

The colloquy leading to the testimony is as follows:

"Q (Defense Counsel) The truth, Sergeant Combs, is that you included Kevin Brown's picture solely because you received a phone call from someone who gave you Kevin Brown's name, isn't that true? Yes or no?

A I received a phone call stating....

Q Yes or no?

A I received a phone call stating who committed the crime.

Q Yes or no?

A Sure."

Trial Record at 473.

It is true that the testimony was elicited "when the State presented evidence" inasmuch as the testimony was given during the State's case-in-chief. However, the fact in question was elicited upon cross-examination. The brief then carefully states that the informant's knowledge "was admitted" to avoid recognizing that *Brown's own counsel* brought the knowledge before the jury. Brown cites the language "committed the crime" in referring to the contents of the informant's tip in order to attribute the information to Combs, yet Combs's statement was a response to defense counsel's question as to whether he included Brown's picture in the photo array because he "received a phone call from someone who gave [him] Kevin Brown's name." Trial Record at 473. Brown would apparently have us believe that counsel's statement did not inform the jury that the informant had told Combs that Brown did it; but that only Combs's answer did. This representation of the record is questionable at best.

 Failure to properly object to excludible hearsay evidence at trial waives the error upon appeal. *Banks v. State* (1991) Ind., 567 N.E.2d 1126, 1129. A defendant may not state one reason for an objection at trial and then rely upon another upon appeal. *Ingram v. State* (1989) Ind., 547 N.E.2d 823, 829. When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule upon it at the appropriate time, he is deemed to have waived that possible error. *Id.* Moreover, grounds for objection must be specific and any grounds not raised in the trial court are not available upon appeal. *Id.*

Here, there was no objection to admission of the hearsay evidence at trial. It would have been strange indeed for defense counsel to bring up the matter and object to it at the same time. The issue at the time of trial was whether Brown could learn the identity of the informant and cross-examine him for exculpatory evidence. The court denied Brown's motion for an *in-camera* interview with the informant for this purpose at a hearing held specifically to decide the issue. Brown objected to the ruling and preserved the error in his motion to correct errors. However, there was never any objection to the admission of the hearsay declaration of the informant arising out of Combs's testimony during trial or upon direct appeal. This latter issue was either not raised at all, or not raised in a specific enough form to allow the trial court to rule upon it. Therefore, it is waived.

 Even if the issue were not waived, it is without merit. Error invited by the complaining party is not reversible error. *Lacy v. State* (1982) Ind., 438 N.E.2d 968, 971. Trial counsel herself first brought the hearsay declaration before the jury. Combs's additional mention of the hearsay declaration was necessitated by her question, which challenged Combs's grounds for including Brown's picture in the photo array. Thus, Brown opened the door to Comb's testimony. Brown cannot now object to the hearsay declaration when he was solely responsible for its introduction at trial.

Since Brown's assertion of error is without merit, his claim of ineffective assistance of counsel necessarily fails.

### IV.

Brown asserts ineffective assistance of trial counsel upon two grounds not hereinbefore considered. Brown asserts that counsel was ineffective because: 1) she did not object to a reference to Brown's criminal history made during her cross-examination of Officer Combs; and 2) she allowed Brown to close his case without presenting the testimony of two witnesses who did not appear for trial. These two assertions were made in the amended Petition for Post Conviction Relief.

 An ineffective assistance of counsel claim is waived in the first proceeding in which it is available but not raised. *Smith v. State* (1990) 2d Dist. Ind.App., 559 N.E.2d 338, 342, *trans. denied,* followed in *Stewart v. State* (1991) 3d Dist. Ind.App., 567 N.E.2d 171, 173. Therefore, an ineffective assistance of counsel claim is waived in a post-conviction proceeding if it was available at the time of the direct review but not raised. *Smith, supra,* at 342.

 Brown was represented by different counsel at trial and upon appeal. Appellate counsel did not present the issue of ineffective assistance of trial counsel upon direct appeal, nor did the amended Post Conviction Petition allege ineffective assistance of appellate counsel in this regard. The issues now presented are waived. Even if they were not waived, however, we conclude that they are without merit.

### A. *References to Brown's Criminal History*

 Brown complains that trial counsel was ineffective for failing to object to two references to his "record" made during cross-examination of investigating Officer Combs. The references were as follows:

"Q You described him in that warrant, did you not?

A I usually put that description on the warrant, yes, ma'am.

Q And you described him as five (5) foot ten (10), not six (6) foot, right? Yes or no?

A I am· sure that is what I put on the warrant if it came off his record." Trial Record at 459.

\*　　\*　　\*　　\*　　\*　　\*

"Q You described him as being medium build, not heavy build, right?

A If that came off his record I put it on the warrant, yes, ma'am." Trial Record at 460.

In considering this issue at the post-conviction hearing, the trial court found that the reference to Brown's record was not repeated, and that trial counsel could have exacerbated the problem by focusing the attention of the jury on the subject as a result of an objection to the evidence, or a motion to strike. Brown challenges the trial court's finding, arguing that trial counsel testified that the error just "passed [her]" and that she should have objected. Record at 367–68. Thus, Brown concludes that counsel's failure to object was a mistake and not the result of a calculated strategic decision.

Brown misinterprets the finding of the trial court. In order to meet the prejudice prong of the *Strickland* standard, Brown must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland, supra,* 104 S.Ct. at 2064. A defendant must affirmatively prove he was prejudiced by his counsel's conduct by showing there is a reasonable probability that, but for the unprofessional errors, the result of the proceedings would have been different. *Lawrence, supra,* 464 N.E.2d at 1294. The court's finding indicates that Brown's cause may well have been hindered rather than helped if counsel made the objection which Brown now advocates. The trial court's finding thus shows that Brown has not carried his burden of demonstrating that, but for the error, the result of the proceedings would have been different.

### B. *Failure to Present the Witnesses*

 The State's case relied upon the victim's identification of Brown in a photo array, in a line-up, and at trial. There was, however, some discrepancy between the initial description given by the victim and

Brown's physical appearance. Brown presented an alibi defense. As part of his defense, Brown attempted to present two witnesses who were at the scene close to the time of the crime but who did not see Brown.

Trial counsel subpoenaed the witnesses but neither appeared for trial. The judge issued a bench warrant. However, neither party had appeared by the close of Brown's case. After Brown had presented all of his evidence except for the testimony of the two witnesses, the judge attempted to secure the witnesses' presence. After a recess, Sergeant Combs told the court that one witness was on her way to the court but the other had not been located. However, defense counsel unexpectedly asserted that Brown wanted to close his case without the testimony of the witnesses. The judge stated that he was not insisting that the case go forward without the witnesses; only that the witnesses be produced as soon as possible. Trial counsel still insisted that Brown wanted to rest his case. The judge asked Brown directly if he wanted to go forward without the testimony of the witnesses, having discussed the issue with his attorney. Brown said he did, and then rested with the acquiescence of the trial court. During the jury's deliberations, the witnesses were brought before the court. Brown moved to re-open the case, but the motion was denied.

At the post-conviction relief hearing, trial counsel testified that Brown told her that "he wanted to get the trial completed; he wanted to get the whole matter over with." Record at 332. On the other hand, Brown testified:

"when we decided to rest the case, [my attorney] told me that the witnesses were not here and, uh, she was a little upset about that and, uh, she said, you know, that we could probably win without them, and, uh, I mean she's my attorney and, obviously, I believed her, and so, uh, I just agreed to it." Record at 442.

Counsel is strongly presumed to have rendered adequate assistance and make all significant decisions in the exercise of reasonable care. *Strickland, supra,* 104 S.Ct. at 2066. To meet the burden of proving ineffective assistance, a defendant must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense. *Burris v. State* (1990) Ind., 558 N.E.2d 1067, 1072.

The record suggests that trial counsel closed the case without the additional testimony pursuant to Brown's own wishes. She testified that she offered to "take a walk" in order to stall for time. Brown was specifically asked whether he wanted to close his case after he was told that one of the witnesses was on her way. He conferred with counsel and then said he did.

In any event, Brown has failed to demonstrate that the testimony of the two witnesses would have contributed materially to the resolution of the issues. Brown's defense was that he was mistakenly or intentionally misidentified as the perpetrator. Trial counsel adequately developed that line of defense in questioning the accuracy of his identification at various stages of the case. The two missing witnesses were not dispositive alibi witnesses. They would have merely testified that they were at the scene of the crime close to the time of its commission but did not see Brown. Such evidence could only provide a remote inference of "alibi." In that regard it would have been merely cumulative of the evidence concerning the identity of Brown. *Warner v. State* (1989) Ind., 535 N.E.2d 547. In short, Brown has not met his burden of demonstrating ineffective assistance of counsel upon these facts.

The conviction upon the charge of attempted murder is reversed. In all other respects, the judgment is affirmed. The cause is remanded for further proceedings not inconsistent with this opinion.[11]

11. We need not anticipate whether Brown will be re-tried for attempted murder. However, we note that Brown's enhanced sentence for class A robbery is sustainable independent of the factors contributing to the attempted murder prosecution. These factors include Brown's two

BARTEAU, J., concurs.

BUCHANAN, J., concurs in result.

previous armed robbery convictions and the fact that the victim was unprotected, elderly, and sustained adverse health effects from the attack.