**David A. CLARK, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 683S228.

Supreme Court of Indiana.

July 19, 1985.

John K. Smeltzer, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions for burglary, class B felonies, I.C. § 35–43–2–1, and from a habitual offender determination, I.C. § 35–50–2–8. The case was tried before the court. Appellant received two concurrent ten year sentences for burglary. The first burglary sentence was enhanced by thirty years because he was determined to be a habitual offender. Thus, appellant's total executed sentence is forty years.

Appellant raises six issues on appeal: (1) whether trial court erred in denying his motion for mistrial or in its stead his motion to strike, due to the fact that the State's two principal witnesses knowingly violated the trial court's separation of witnesses order; (2) whether the trial court erred in sustaining several State objections to questions he posed to State's witness Mantz during cross-examination; (3) whether trial court erred in denying his motion to strike the testimony of State's witness Watson when Watson refused to answer his questions on cross-examination; (4) whether trial court erred in refusing to compel Watson to answer cross-examination questions after Watson was held in contempt; (5) whether there was sufficient evidence to support his convictions for burglary; and (6) whether there was sufficient evidence to support his habitual offender determination.

These are the facts from the record that tend to support the determination of guilt. On December 20, 1981, during the evening, appellant, drove his truck to the Elmer Noyer residence. Watson and Mantz accompanied him. When they arrived, they noticed Noyer was at home. They waited about twenty minutes until Noyer left. Appellant and Mantz jumped out of the truck, crouched low and ran quickly toward the residence, while Watson drove away in the truck. Appellant kicked in the backdoor and he and Mantz entered the residence. They ransacked the residence and took silverware, bills, coins, jewelry and china. They placed the items in pillow cases, then Watson returned in the truck, and they went to Mantz's trailer. At the trailer, they divided up the items taken from the Noyer residence. At trial, it was determined that appellant and his wife had rented property from Noyer and that appellant had been to the Noyer residence on a prior occasion. Mantz testified that it was appellant's idea to burglarize the Noyer residence.

On December 27, 1981, Mantz drove his car to a park which was a half mile from the Lloyd residence. Appellant and Watson accompanied Mantz. At the park, appellant and Watson walked toward the Lloyd residence, while Mantz drove away in the car. At the residence, appellant popped open a sliding door with a metal fence post. Subsequently, appellant and Watson entered the residence. They searched the residence, and then took coins, jewelry, a cashmere sweater, hand guns and a bottle full of pennies. They left the residence, walked up a hill to an old swimming pool bath house and buried the hand guns and

the bottle full of pennies. Thereafter, they met Mantz, went back to Mantz's trailer and divided up the remaining items taken from the Lloyd residence. At trial, it was determined that Lloyd was married to appellant's aunt and that appellant had knowledge that they were on vacation at the time of the burglary.

At trial, Mantz and Watson testified for the State against appellant.

## I

At trial, the trial court granted appellant's motion for separation of witnesses. Subsequently, it was discovered that the State's two principal witnesses, Mantz and Watson, had knowingly violated the separation order. They had discussed certain aspects of their testimony, particularly the dates of the offenses. This discussion was about two hours in duration; however, it transpired before either of them testified. Appellant moved for mistrial and the trial court took the motion under advisement. Subsequently, the trial court questioned Mantz and Watson and then denied the motion for mistrial. As a result, appellant moved to strike the testimony of Mantz and Watson. These motions were denied also. The trial court stated that the conversation between Mantz and Watson was not such as to taint all of their testimony. Appellant argues that it was error to deny his motions because the witnesses' violation of the separation order was prejudicial and denied him a fair trial.

Whether to order the separation of witnesses and what to place in the order are questions best resolved by the trial judge with resort to immediate trial conditions. Once a separation of witnesses has been ordered, what to do about a violation of the order is a question which is to be resolved by a study of affected interests and their fair accommodation. The trial court's rulings will not be disturbed unless there is a clear abuse of that discretion. *Buchanan v. State* (1975), 263 Ind. 360, 332 N.E.2d 213.

Here, the trial court did not abuse its discretion in denying appellant's motions and in allowing witnesses Mantz and Watson to testify. The primary reason for a separation of witnesses order is to prevent witnesses from gaining knowledge of questions actually posed to, and answers actually given, by prior witnesses, and adjusting their own testimony as a result thereof. This danger was not present here because the discussion between Mantz and Watson took place before either of them testified. Furthermore, they both testified about five different burglaries each of which involved complex circumstances and events. Therefore, it is unlikely that any prejudice resulting from possible collusion survived the rigorous, thorough, and lengthy cross-examination that Mantz and Watson were subjected to. The trial court's rulings reflect a fair accommodation of affected interests.

## II

Appellant claims that the trial court erred in sustaining several State objections to his questions posed to State's witness Mantz during cross-examination. The questions concerned a prior inconsistent statement he made to appellant's wife, conversations Mantz had with certain friends and acquaintances that appellant had testified and informed against, inducements made to Mantz by the State in return for his testimony, Mantz's use of drugs, and disposition of stolen property.

These questions focused on Mantz's credibility as a witness. We regard any errors the trial court may have committed in disallowing these questions to be without impingement upon substantial rights in light of the entire cross-examination of Mantz. Defense counsel conducted a rigorous, thorough, and lengthy cross-examination of Mantz. During cross-examination, Mantz was discredited numerous times. It was brought out that Mantz was a convicted felon and career criminal, that he was an extensive drug user and had spent time in mental hospitals, that his testimony was the result of a plea bargain, that he was

given "use immunity," and that he was aware appellant informed on him. Under such thorough and productive questioning, we cannot say that appellant suffered any prejudice as a result of the trial court disallowing the questions mentioned above.

### III

On cross-examination, Watson would not disclose where he obtained a drug called Millorio. The trial court ordered him to answer and he refused; consequently, the trial court found him in contempt and sentenced him to thirty days. Subsequently, appellant moved to strike Watson's entire testimony; this motion was denied.

Later, on cross-examination, Watson would not disclose whether he had defecated in a bedroom at one of the burglary scenes. The trial court found him in contempt and sentenced him again to thirty days. Subsequently, appellant moved to strike Watson's entire testimony; this motion too was denied.

■ Appellant argues that the trial court erred in denying his motions to strike and that he was denied his right to confront and cross-examine a witness. The right to confront witnesses includes the right of full, adequate and effective cross-examination; it is fundamental and essential to a fair trial. See *Pointer v. Texas* (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475.

Here, defense counsel conducted a rigorous, thorough and lengthy cross-examination in which Watson was impeached numerous times. The questions Watson refused to answer focused on his credibility as a witness, but given the effect of prior and subsequent impeachment, the questions were peripheral. Also, the very fact that he was held in contempt diminishes his credibility as a witness. Therefore, we cannot say that appellant was denied his right to full, adequate and effective cross-examination, nor can we say that he was harmed by the denial of his motions to strike.

### IV

Appellant also argues that the trial court should have compelled Watson to answer the questions. This argument is without merit. The trial court held Watson in contempt for not answering. The penalty of contempt is the most powerful instrument of legally permissible testimonial coercion that the trial court has at its disposal. If the witness refuses to answer the question after being held in contempt, then one of the trial court's options is to strike the testimony of the witness.

Another option the trial court has is to do nothing, as was done here; however, this is proper only when the trial court determines that defendant's right to full, adequate and effective cross-examination has not been prejudiced by the witness' refusal to answer the question. Under the circumstances of Watson's testimony, the trial court pursued the proper course because, as was stated in the previous issue, appellant's right to full, adequate and effective cross-examination has not been prejudiced by the witness' refusal to answer the question. Under the circumstances of Watson's testimony, the trial court pursued the proper course because, as was stated in the previous issue, appellant's right to full, adequate and effective cross-examination was not prejudiced.

### V

Appellant argues that there was insufficient evidence to support his convictions for burglary.

■ This Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Reed v. State* (1979), 185 Ind.App. 5, 387

N.E.2d 82; see also *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d 1088.

The evidence recited in the statement of facts is clearly sufficient to support his convictions for burglary.

## VI

■ Appellant argues that there was insufficient evidence to support his habitual offender determination. At the habitual offender proceeding, the trial court found him to be a habitual offender upon the charge which alleged four prior felony convictions and upon evidence as to all four. Appellant argued at the proceeding that the alleged felonies were sequentially defective in that the State had not proven that the commission of the subsequent felonies occurred after the conviction and sentencing upon the felonies directly precedent. Appellant also raised this issue in his Motion to Correct Errors. Cf. *Asbell v. State* (1984), Ind., 468 N.E.2d 845.

In *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339, this Court held:

> It is clear from the statute (I.C. § 35–50–2–8) that to sustain a sentence under it, the State must show that the defendant had been twice convicted and twice sentenced for felonies, that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction.

*Miller, supra* 417 N.E.2d at 342.

In the case at bar, the State has not presented any evidence as to the dates of the commission of the alleged prior felony convictions. As a result, there is no way to discern if the alleged prior felony convictions are in their proper statutory sequence. The State only provides evidence of the time of convictions and sentences; this is not sufficient, especially in this case where the four alleged prior felony convictions occur over a period of three years.

The convictions for burglary are affirmed. The habitual offender determination is vacated.

GIVAN, C.J., and PRENTICE, J., concur.

PIVARNIK, J., dissenting and concurring with separate opinion.

HUNTER, J., not participating.

PIVARNIK, Justice, dissenting and concurring.

I concur in this opinion in the issues decided in specifications 1 through 5, but respectfully dissent with regard to specification 6 regarding the sufficiency of the evidence to support the habitual offender determination.

I agree with the majority that in order to sustain a sentence under the habitual offender statute, the State must show the defendant had been twice convicted and twice sentenced for felonies and that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense, upon which the enhanced punishment is being sought, was subsequent to his having been sentenced upon the second conviction. Even though I feel the State could have done a better job by proving the actual dates of the commission of the crimes here, I think there is sufficient evidence from the facts given to infer a proper sequence of felonies here so that the trial judge was justified in entering judgment upon Defendant.

The evidence clearly shows that Defendant was convicted and sentenced for burglary in 1974. The evidence presented at the habitual offender phase of the trial was that he was convicted in 1975 and 1976 of other crimes. There are facts shown which strongly infer that these crimes were committed after the 1974 sentencing and serving of sentence by the defendant. There is no inference whatever by anyone that these crimes were or could have been committed before the conviction and sentencing of 1974.

In his own testimony in the guilt phase of the trial (Record Vol. V, p. 1031) Defendant testified in his own behalf that he was convicted and sentenced in Hamilton County in 1974 to a term of two to five years for burglary. He testified he served that sentence at the IYC in Derryville Youth Camp. He was then asked: "What was your next conviction after that?" and his answer was: "It would have been in '76. That was, that was the safe burglary that Gerald Mantz set me up on." He then testified further about his subsequent convictions. The evidence presented at the habitual offender phase took this same general direction. It was proved that he had in fact been convicted and sentenced and served his sentence in 1974. It was later shown that from 1975 to 1977 he was convicted and sentenced on the other felonies. Although no document states that he did in fact commit these crimes after 1974, that was the tenor of all of the documents, and the total presentation of the State, not refuted in any manner, shows that this is the case. It is clear that the present charges on which the enhanced sentence comes about were for crimes committed in 1981 and, therefore, it seems to me there is sufficient showing that there is the required sequence of these events.

I therefore dissent and would affirm the trial court in all respects.