**Ralph F. FOX, III, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 585 S 210.

Supreme Court of Indiana.

March 23, 1988.

David M. Geisler, Knox, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Ralph Fox was convicted of Robbery While Armed, a class B felony, and Theft, a class D felony. Fox was sentenced to a twenty (20) year term on the robbery conviction, and received no sentence for the theft conviction. His Motion to Correct Errors was denied and he directly appealed to this Court.

Fox raises the following issues for our review:

1. prosecutorial misconduct; and
2. error in admitting a State's witness' voluntary audio and video taped statements.

The facts most favorable to the verdict show on May 11, 1983, Kern's Keg in San Pierre, Indiana, was robbed by two men wearing ski masks. The men took a bank bag which contained approximately three hundred ($300) dollars in cash, a tavern key, a zodiac medal, and bills from nearby grocery stores. Three (3) persons, including the barmaid, were in the bar at the time of the robbery, but no one was able to identify the perpetrators. A few months later, Christopher Day was apprehended during a separate robbery, and he confessed to committing a very large number of robberies, including the one at Kern's Keg. Day implicated Fox as being his accomplice in that robbery. Day made two voluntary statements to the police, one of which was audio taped and the other video taped. Day entered into a plea agreement with the State after making the voluntary statements. Those statements were played for the jury at trial.

I

██ Fox first contends numerous instances of prosecutorial misconduct occurred at trial. Fox correctly points out the standards in our jurisdiction relating to prosecutorial misconduct. Briefly, the standard to determine whether prosecutorial misconduct has occurred is whether the conduct under all circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position should be measured by the probable persuasive effect of the misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant. *Bixler v. State* (1984), Ind., 471 N.E. 2d 1093, 1102, U.S. *cert. den.* (1985) 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86, citing *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, 848.

██ The first instance Fox points to is the State's calling Donna Bloomberg (Bonebreak) to testify in its case in chief. The State asserts it acted properly in attempting to disprove, through Bloomberg's testimony, a defense which Fox indicated he would attempt to prove. Fox contends because no alibi evidence was introduced at trial, the State acted improperly. However, on August 4, 1983, prior to trial, Fox filed with the court his Notice of Alibi Defense which stated Fox was at his aunt's and an acquaintance's homes on the day in question. At trial, defense counsel objected to the witness' testimony after one question and answer. The court sustained the objection and instructed the jury to disregard the prosecutor's question regarding

her status as an alibi witness, and the witness' response. The witness was then excused. Any possible error here was therefore cured by the court's actions.

■ Fox next argues prosecutorial misconduct occurred when, on rebuttal, the State referred to two non-testifying witnesses. Fox contends the jury was left with a clear understanding the witnesses weren't called because their testimony would only buttress the already damaging testimony of other witnesses against him. The record shows that in his closing argument, defense counsel initially referred to these very witnesses and implied the State did not ask the witnesses to testify for a specific reason. The prosecutor, in response to defense counsel's argument, properly attempted to explain why these witnesses were not called. *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248, 256. Defense counsel objected to the prosecutor's reference to the witnesses and the court admonished the prosecutor to pursue the issue no further. When the prosecutor continued his earlier reference, defense counsel made no objection. There is no error here meriting reversal.

■ Fox next points to the prosecutor's comment on rebuttal that defense counsel suggested the crime was never committed. A reading of the record again shows the prosecutor's statement was made in reference to defense counsel's earlier comment on Day's credibility. He stated, "Maybe Chris Day didn't even rob Kern's Keg." Again, the prosecutor's statement was a response to defense counsel's argument, and was not improper. *Grassmyer*, 429 N.E.2d at 256. The statement was within the bounds of permissible comment on final argument.

Fox also argues the prosecutor's reading a portion of Justice White's dissent in *United States v. Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, prejudiced him in the eyes of the jury. While he concedes previous Indiana decisions have held it is not improper to read this passage to the jury, *see Johnson v. State* (1985), Ind., 475 N.E.2d 17, and *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346, he

maintains the result in the present case should be different. Fox attempts to distinguish these cases from the present case on the basis the defendants in *Johnson* and *Hubbard* (1) waived their rights because of improper objections; (2) they were clearly guilty; and (3) because the prosecutor in this case read beyond the "approved portion" of the dissent. These contentions are without merit. The holding of those cases was not based on waiver or the presence of "clearcut guilt." Neither *Johnson* nor *Hubbard* held only an "approved portion" of Justice White's opinion may be read to the jury. Both held that reading from decisions to the the jury is proper. *Johnson*, 475 N.E.2d at 19; *Hubbard*, 313 N.E.2d at 350.

Also, the trial court in the present case read a "proper presumption of innocence" instruction to the jury which, pursuant to *Hubbard*, was sufficient to cure any error or prejudice which may have occurred at trial.

■ Lastly, Fox contends he was denied due process based on the above-stated arguments, and other instances of misconduct. Fox names only one other instance, that being a series of belittling remarks against him. However, defense counsel failed to object during this time, and thus waived any error which may have occurred. A contemporaneous objection is necessary in order to raise the question of prosecutorial misconduct on appeal. *Hossman v. State* (1985), Ind.App., 473 N.E.2d 1059, 1061. Fox has failed to show the State engaged in prosecutorial misconduct meriting reversal.

## II

The second issue presented on appeal is whether the trial court erred in playing both Day's audio taped and video taped confessions which implicated Fox as Day's accomplice in the Kern's Keg robbery. In particular, Fox claims the tapes were cumulative and edited in such a way as to violate his motion *in limine* which had been granted prior to trial.

At trial defense counsel cross-examined Day at length; he attacked Day's credibility based on his prior convictions and the plea agreement he worked out with the State. Day admitted he had been convicted of perjury in a prior unrelated trial. He further admitted he had confessed to other crimes that would subject him to prison terms of over three-hundred (300) years. Suggestions were made during his testimony that he agreed to testify against Fox in this case in return for a term of thirty (30) years total for all of his potential prosecutions. The State sought to show by redirect examination that Day had given two statements to the police, one on audio tape and one on audiovisual tape, several months before the plea bargain was negotiated, in which his testimony was consistent with that he had given on the stand. Objection was made that this would be repetitive and cumulative testimony and would do no more than "underline" the testimony against Fox. The trial court overruled the objection and permitted portions of the tapes that referred to the Kern's Keg robbery to be played.

Fox concedes the admission or rejection of cumulative evidence is within the sound discretion of the trial court and its ruling thereon will not be set aside unless a clear abuse of that discretion is shown. *Davis v. State* (1983), Ind., 456 N.E.2d 405, 409. He cites no authority to show an abuse of discretion other than his claim that these tapes served to "underline" Day's testimony. The trial court stated it did not find this to be a sufficient reason to justify denying the offer. We fail to find abuse of discretion on this ground.

Fox further claimed admission of the tapes violated an *in limine* order entered by the court before trial. The court had granted Fox's motion to prevent the admission of any of Fox's criminal background other than felony convictions which would be admissible as affecting his credibility when he testified. The tapes in question excised Day's past activity except for his relationship with Fox in the Kern's Keg robbery. One of the questions in the tapes was directed to Day; he was asked where he first met Fox. Apparently the answer to this was that they met in jail or prison. This answer was excised. In the tape played to the jury there was still a question about where the two met, but no answer was ever given; there was a blank spot and then the testimony continued. Fox asserts the jury could surmise from the question that they did, in fact, meet in prison. There is nothing in the record to show this is true. There is no statement regarding where the two met, nor did Fox object at trial and raise the question he now raises on appeal. Again, Fox's only statement on the issue is that the motion *in limine* was violated, but he points to no grounds on which we could make that finding. Fox has failed to preserve error on this issue, and therefore it is waived. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 908; *Neaveill v. State* (1985), Ind.App., 474 N.E. 2d 1045, 1050.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, Dissenting.

After having been arrested for another robbery, Day, a convicted perjurer, confessed to several crimes, including the robbery of Kern's Keg, and voluntarily identified appellant Fox as the co-perpetrator. Later, Day struck a plea bargain, agreeing to testify against appellant Fox. In my view Day was in the process of seeking benefit with prosecuting authorities when he went so far at the time of his confession as to identify appellant Fox. Day was certainly motivated by more than a need to get it "off his chest." He most certainly was trying to curry favor with authorities. Thus his motive to falsify would have been present when he gave the audio tape and video tape confession. The later plea agreement was no more than the full fruit of Day's plan. The motive of Day to falsify or exaggerate so as to incriminate appellant Fox would have existed at the time the tapes were made while under arrest, at the

time of the making of the plea bargain, and at the time of Day's trial testimony. Therefore the consistency of Day's taped statements with his trial testimony does not serve as rebuttal to the claim made by appellant during his cross-examination of Day that he was testifying in a false or exaggerated manner so as to gain a benefit for himself with prosecuting authorities. McCormick on Evidence pp. 115–120 (3rd ed. 1984).

The conviction of appellant rests upon the testimony of Day. The prosecution gained a very real advantage when it was permitted to bolster Day's credibility by running the tapes for the jury. This was an advantage to which the prosecution was not entitled. It was error to permit the jury to view these tapes. I would reverse and remand for a new trial.