Edward F. CLARK, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9111–CR–521.

Court of Appeals of Indiana,
Second District.

Aug. 4, 1992.

Rehearing Denied Aug. 24, 1992 and
Sept. 28, 1992.

Transfer Denied Oct. 28, 1992.

Richard D. Gilroy, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SULLIVAN, Judge.

Appellant Edward F. Clark appeals his convictions for Attempted Murder[1], a Class A felony, Criminal Recklessness[2], a

---

1. I.C. 35–41–5–1 (Burns Code Ed.1985).

2. I.C. 35–42–2–2 (Burns Code Ed.Supp.1992).

Class D felony, and the habitual offender determination[3] which led to a thirty-year sentence enhancement.

The facts most favorable to the judgment reveal that at approximately 11:30 p.m. on the evening of February 23, 1989, Portia Bledsoe (Portia), her brother Joseph Bledsoe (Joseph), and Clark went to the apartment of Dorisene Tate (Dorisene). The three intended to pick up Portia's 2–year–old daughter Brykeesya from Dorisene's son Brian Tate (Brian), who was Portia's boyfriend. Brian and Brykeesya were not there at the time, so Dorisene invited Portia, Joseph, and Clark inside the apartment to wait for them. While they were waiting, Clark accused Brian of kidnapping Brykeesya, and an argument ensued. The loud voices awakened John Jackson (Jackson), Dorisene's son-in-law, who was spending the night at the apartment. Jackson asked Clark to leave. As Portia, Joseph, and Clark were walking out the door, Clark announced that they would be back.

Shortly after midnight, Brian arrived at the apartment with Brykeesya and put her to bed in an upstairs room. A few hours later, Dorisene heard a loud banging on the front door. When she opened the door, she found Portia, Joseph, Portia's sister Lisa Bledsoe (Lisa), Portia's friend Theresa Hartley (Hartley), and Clark standing on the porch between the storm door and the front door. Dorisene told Portia that she alone could come inside, but when Portia entered the apartment, the others began shoving against the door. Again awakened by the noise, Jackson went downstairs and attempted to shut the door, but Clark pulled a gun from his pocket and jammed it between the door and the frame. Jackson pushed Clark's arm toward the ceiling, and Clark fired a shot. Before Jackson could shut the door, Clark fired another shot into the room. Momentarily thereafter, he fired a shot outside the house which went through the window of Brykeesya's bedroom. Clark left the premises at that point and was arrested by the police later in the morning.

Upon appeal, Clark presents eight issues which we restate as follows:

(1) Whether the trial court adequately instructed the jury with respect to the intent element of attempted murder;

(2) whether the trial court gave the jury an impermissible *"Allen"* charge in responding to jury questions during deliberations;

(3) whether the court's failure to follow the prescribed procedure for responding to jury questions constituted reversible error;

(4) whether certain statements by the prosecutor during final argument constituted prosecutorial misconduct;

(5) whether Clark received ineffective assistance of trial counsel; and

(6) whether the evidence was sufficient to sustain the conviction for criminal recklessness and the habitual offender determination.

We reverse and remand.

## I.

Clark first challenges the adequacy of the jury instructions with respect to the intent element of the charge of attempted murder. Clark admits that he failed to object to the trial court's final instructions and failed to tender any instructions of his own to correct the alleged error. However, he asserts that this issue has not been waived because the trial court's error is fundamental.

Specific intent is a necessary element of the crime of attempted murder. *Zickefoose v. State* (1979) 270 Ind. 618, 622, 388 N.E.2d 507, 510. The specific intent necessary to convict upon a charge of attempted murder is intent to achieve the result of death; not merely intent to engage in conduct carrying with it the risk of death. *Abdul–Wadood v. State* (1988) Ind., 521 N.E.2d 1299, 1301; *Smith v. State* (1984) Ind., 459 N.E.2d 355, 357–58. An attempted murder instruction is infected with fundamental error when it leaves the jury with the impression that intent to

---

**3.** I.C. 35–50–2–8 (Burns Code Ed.Supp.1992).

engage in the conduct leading to the risk of death alone is sufficient to convict on a charge of attempted murder. *Brown v. State* (1992) 2d Dist.Ind.App., 587 N.E.2d 693.

In relevant part, the jury here received the following instructions:

> " 'A person who knowingly or intentionally kills another human being ... commits murder, a felony.' ... 'A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he *engages in conduct* that constitutes a substantial step toward commission of the crime.'

> \* \* \* \* \* \*

> A person *engages in conduct* 'knowingly' if, *when he engages in the conduct, he is aware of a high probability that he is doing so.*

> A person *engages in conduct* 'intentionally' if, *when he engages in the conduct*, it is his conscious objective to do so."

> (Emphasis supplied.) Record at 104–05, 107.[4]

These instructions are substantially identical to the instructions found to be fundamental error in *Brown, supra*. In substance, both sets of instructions recite the statutory definitions of Murder[5], Attempt[6], and Knowing[7]. As in *Brown*, the instructions here constitute fundamental error because they clearly and erroneously provide that the required intent is intent to engage in the conduct rather than intent to accomplish the result of killing another human being.

Because the instructions upon the charge of attempted murder are infected with fundamental error, we must reverse the con-

viction upon the attempted murder charge and remand the cause for further proceedings not inconsistent with this opinion. Accordingly, we need consider the remaining issues only to the extent that they are relevant to the criminal recklessness conviction and the thirty-year enhancement of the sentence imposed for that offense.[8]

## II.

■ Clark asserts that the trial court gave the jury an impermissible "Allen charge" in responding to a question sent to the trial court during its deliberations. The record reveals that the jury sent to the trial court the question "[h]ow long are we given to deliberate?", to which the court answered "[a]s long as it takes. There is no set time limit." Supplemental Record at S–6F. Approximately three and one half hours later, the jury returned its guilty verdict.

■ An *Allen* charge is a supplemental instruction suggesting to an apparently deadlocked jury that it should reach a verdict, or a similar admonishment which might encourage the jury to unduly compromise the verdict. *Fultz v. State* (1985) 4th Dist. Ind.App., 473 N.E.2d 624, *trans. denied. See Lewis v. State* (1981) Ind., 424 N.E.2d 107, 109. We carefully scrutinize *Allen* charges in order to assure that a deadlocked jury is not coerced by the trial court into reaching a verdict which is not truly unanimous. *See Lewis, supra,* at 109; *Fultz, supra,* 473 N.E.2d at 629. This danger is not present, however, when the trial court has no reason to believe that the jury is deadlocked. Therefore, we conclude there can be no *Allen* violation in the ab-

---

4. Judge Hoffman's dissent reads more into the instruction defining murder than is justified. The instruction does not tell the jury that the defendant acted "with the intent to kill."

5. I.C. 35–42–1–1(1) (Burns Code Ed.Supp.1992).

6. I.C. 35–41–5–1(a) (Burns Code Ed.1985).

7. I.C. 35–41–2–2(a) (Burns Code Ed.1985).

8. Clark challenges the procedure employed by the trial court to respond to four jury questions sent to it during jury's deliberations. The first

three questions asked for clarifications regarding the elements and lesser included offenses of attempted murder. Our disposition with respect to the attempted murder charge renders the alleged procedural irregularity associated with these questions moot. The fourth question is treated *infra*. In addition, Clark challenges the sufficiency of the evidence upon the attempted murder charge as well as the effectiveness of his counsel in failing to object to the tendered jury instructions upon the attempted murder charge. These issues are also moot.

sence of some evidence suggesting that the jury was deadlocked when an alleged *Allen* charge was read.

The record does not support Clark's theory that the jury was deadlocked. The jury's question "[h]ow long are we given to deliberate?", standing alone, expresses only the jury's inability to agree upon a verdict at the time the question was asked, but not the jury's expectancy that it would be unable to reach a verdict. *See Maxwell v. State* (1970) 254 Ind. 490, 260 N.E.2d 787, 791, *cert. denied*, 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863.[9]

Clark urges us to conclude, however, that the question demonstrates the jury's deadlock when considered in light of the three requests for clarification of the attempted murder instruction which preceded it. The questions and answers were as follows:

> "QUESTION: On Wednesday you described the essential elements of an attempted murder charge. Can we get these elements from you?
>
> ANSWER: Please re-read your preliminary instructions."

Supplemental Record at S–6A.

\* \* \* \* \* \*

> "QUESTION NUMBER 2: Is there an option of a lesser charge than 'Attempted Murder' if the jury rcommends [sic]?
>
> ANSWER NUMBER 2: Please re-read your instructions and continue to deliberate.
>
> QUESTION NUMBER 3: Can you define 'Culpability' in regards to the definition of 'Attempted Murder'?
>
> ANSWER NUMBER 3: Please re-read your instructions and continue to deliberate."

Supplemental Record at S–6C.

We are not persuaded that the questions indicated an inability to reach a verdict. The fact that the jury showed some confusion regarding the attempted murder instruction suggests that it needed time to work its way through the elements of the charge, and that at the time of the last question, it had not yet reached a verdict. In addition, the jury asked the last question at 5:05 p.m., which suggests that it wanted to know whether it would be allowed to leave and reconvene or whether it would be required to continue its deliberations until it reached a final verdict.[10] At the least, the juror's questions demonstrate confusion with respect only to the attempted murder charge, which is reversed. There is no evidence that the jury had any reservations regarding the criminal recklessness conviction.

### III.

■ Clark challenges the procedure employed by the trial court in responding to the jury's questions. He claims that the trial court did not call counsel into open court nor was he ever notified of the jury's written questions and the trial court's responses.

■ The proper procedure is for the court to call the jury into open court in the presence of all of the parties and their counsel, if they desire to be there, and to reread all instructions given prior to their deliberations, without emphasis on any of them and without further comment. *Lewis, supra*, 424 N.E.2d at 111. However, a trial court's failure to comply with this procedure is reversible error only upon a showing of prejudice. *Brown v. State* (1989) Ind., 543 N.E.2d 1120, 1122. Prejudice will be presumed from a failure to

---

**9.** I.C. 35–42–1–1(1) (Burns Code Ed.Supp.1992).

**10.** We note, however, that the trial court's answer that the jury was to deliberate "as long as it takes" and that "[t]here is no set time limit" is not recommended. Although this statement falls short of stating that the trial cannot end in a hung jury (a misstatement of law), or that jurors with a minority opinion should bend their will to agree with the majority, it could be

so construed in circumstances where the evidence suggests that the jury is deadlocked. We emphasize that the trial court must be exceedingly careful to refrain from giving seemingly innocuous instructions to the jury which may later appear to violate the mandates of *Lewis v.. State, supra*. That is not the case here, however, where there is no evidence of juror deadlock.

follow the standard procedure, but the presumption may be rebutted. *Id.*

Of the four questions directed to the trial court, three were specifically directed to the attempted murder charge and one asked how long the jury was given to deliberate. The only reasonable interpretation of the questions, taken together, is that they related to the attempted murder deliberation and not the criminal recklessness charge. As we have held hereinbefore, the fourth question was not an *Allen* charge. Therefore, Clark could not have suffered any prejudice with respect to the criminal recklessness charge as a result of this procedural defect. In fact, Clark's argument upon this issue is directed solely at the attempted murder charge.

The trial court's failure to follow the proper procedures for answering questions sent from the jury during deliberations did not prejudice the criminal recklessness conviction.

## IV.

Clark contends that repeated prejudicial statements and misstatements by the prosecutor during final argument constituted prosecutorial misconduct rising to the level of reversible error. He asserts that his failure to lodge objections to the statements does not preclude review because the error is fundamental.

In reviewing a claim of prosecutorial misconduct, we consider whether the prosecutor's conduct under all circumstances placed the defendant in a position of grave peril to which he should not have been subjected. *Fox v. State* (1988) Ind., 520 N.E.2d 429, 430. Whether such peril existed is measured by the probable persuasive effect of the misconduct upon the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant's right to a fair trial. *Id.*

Clark contends that the prosecutor improperly expressed her opinion as to the credibility of the witnesses. A prosecutor remains within the bounds of permissible advocacy by expressing a belief in the guilt of the accused during final argument if it is clearly stated or implied that the predicate for the belief is the evidence presented at trial. *Robinson v. State* (1986) Ind., 499 N.E.2d 253, 256. A prosecutor may comment upon the credibility of witnesses so long as the assertions arise from the evidence. *Beard v. State* (1981) Ind., 428 N.E.2d 772, 775.

Here, the prosecutor's comments were based upon the evidence. The prosecutor acknowledged Clark's defense that someone else fired a gun into the apartment. She correctly stated that to convict Clark, the jury must make a threshold determination that he was the person who shot into the apartment. She then outlined the evidence which supported the conviction for criminal recklessness. Based upon that evidence, she noted that deliberations upon the criminal recklessness count would be easier than deliberations upon the attempted murder count.

The prosecutor then outlined the evidence favorable to a conviction for attempted murder. She recalled the demeanor of a witness whose credibility was particularly at issue. Explicitly, Clark's defense was that the events occurred much as advanced by the State, except that an unidentified person fired the gun into the apartment. The prosecutor related her arguments to legal principles and to the evidence and asked the jurors to rely upon their memories of the evidence when deliberating. Contrary to Clark's contention, the prosecutor's comments did not place him in a position of grave peril. Instead, the comments relied upon the evidence and to some extent acknowledged the weaknesses inherent in cases which turn upon the credibility of the witnesses.

Also, Clark complains that the prosecutor invaded the province of the jury by noting upon several occasions during her closing argument that the evidence demonstrated either that he was the gunman or that an unknown person was the culprit. Here, the jurors were informed early in the proceedings that the State's evidence and the defense evidence were divergent upon

only one essential point: whether Clark or an unknown person committed the shooting. The prosecutor's characterization of the task before the jury was inexorably tied to the evidence.

■ Clark argues that he was unduly prejudiced by the prosecutor's exaggerated characterization of the unknown person as an "unknown, faceless stranger" and an "unknown, mysterious stranger," and by referring to the unknown people who arrived at the scene to commit the shooting and inexplicably disappear as "men from Mars."

■ The prosecutor is not foreclosed from observing that arguable flaws exist in the case presented by the defense. As noted by the State, while neither party may embellish facts, final argument need not consist of a bland recitation of the evidence devoid of thought-provoking illustration. Again, the comments did not constitute misconduct.

Clark alleges that the prosecutor mischaracterized evidence when she stated that he tore the bags which the police had placed on his hands after his arrest. The evidence demonstrated that bags had been placed on Clark's hands to preserve any gunshot residue which may have been deposited while Clark fired the gun. The bags were torn sometime during Clark's transportation to jail. Because the evidence disclosed that the officers did not tear the bags and that the bags were not of such quality as to disintegrate after a short period, the evidence supports an advocative suggestion that Clark ripped the bags from his hands in an attempt to thwart police efforts to gather evidence.

Clark complains of additional statements made by the prosecutor, which, however, amounted to fair comment upon the evidence.[11] In short, Clark has not presented any cause for reversal by reason of prosecutorial misconduct.

## V.

Clark next contends that he received ineffective assistance of trial counsel. Ineffective assistance of counsel claims are judged by the standard set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Lawrence v. State* (1984) Ind., 464 N.E.2d 1291, 1294. In order to reverse a conviction upon an ineffective assistance of counsel claim, an appellant must show: 1) that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and 2) that the deficient performance prejudiced the defense. *Strickland, supra,* 466 U.S. at 686–87, 104 S.Ct. at 2064. Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable care. *Strickland, supra,* 466 U.S. at 690–92, 104 S.Ct. at 2066; *Burris v. State* (1990) Ind., 558 N.E.2d 1067, 1072, *rehearing denied.* To show prejudice, a defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland, supra,* 466 U.S. at 686–87, 104 S.Ct. at 2064; *Lawrence, supra,* 464 N.E.2d at 1294.

Clark contends that counsel was ineffective for failing to object to the prosecutor's alleged misstatements during closing arguments. We have heretofore disposed of this issue upon the merits.

■ Clark challenges counsel's examination of several witnesses. Clark notes that counsel allowed witnesses upon cross-examination to answer questions in narrative form, and argues that many of the answers elicited from witnesses tend to establish his guilt. Clark also complains about answers elicited from witnesses during the State's examinations.

■ When scrutinizing counsel's performance, we are highly deferential and avoid using hindsight to distort our evaluation of counsel's performance. *Clark v. State* (1990) Ind., 561 N.E.2d 759. A defen-

---

11. Clark also asserts that the prosecutor misdefined the elements of attempted murder in her closing argument. Our reversal of the attempted murder conviction renders this issue moot.

dant must present strong and convincing evidence to rebut the presumption of competent representation of counsel. *Id.* Isolated instances of poor strategy, or inartfully executed examinations do not necessarily amount to ineffective assistance. *Mott v. State* (1989) Ind., 547 N.E.2d 261, 263. Attempting to explain rather than exclude evidence is a tactical decision within counsel's reasonable professional judgment. *Mullins v. State* (1987) Ind., 504 N.E.2d 570.

Limiting witnesses to yes or no answers upon cross-examination is an effective technique of the advocate. However, counsel's failure to so limit the witnesses is not itself sufficient to render the representation ineffective. An objection to long narrative responses given during the prosecution's direct examination of its witnesses would have been sustained. However, such objections would not have ultimately kept the substance of the testimony out of evidence. To the extent that witnesses gave testimony tending to establish Clark's guilt upon his counsel's examination, Clark has failed to carry his burden of showing that these instances were devoid of strategic purpose or were more than isolated instances of inartful examination. Finally, counsel is clearly not responsible for the introduction of admissible testimony during the prosecution's examination of witnesses tending to establish Clark's guilt.

Clark also suggests that counsel was ineffective for failing to object to the failure of the trial court to specify which of the two convictions was being enhanced by the habitual offender determination. The judgment of the trial court clearly reflected a 30–year enhancement as a result of the habitual offender determination and that his commitment to the Department of Correction would be for "a total of 60 years." Our reversal of the attempted murder conviction leaves only the conviction for crimi-

nal recklessness in place. Our reversal requires remand of the cause to the trial court. Because we affirm the criminal recklessness conviction and the habitual offender determination (*see* Issue VI, *infra*), the trial court in its discretion might modify the judgment to reflect an enhancement of the two-year sentence imposed for the criminal recklessness conviction.[12]

Clark did not receive ineffective assistance of counsel.[13]

## VI.

Clark challenges the sufficiency of the evidence supporting the criminal recklessness conviction and the habitual offender determination.

Upon review of the sufficiency of the evidence, we examine only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. *Smedley v. State* (1990) Ind., 561 N.E.2d 776, 782. In so doing, we will not reweigh the evidence nor judge the credibility of the witnesses. *Id.*

A person who recklessly, knowingly, or intentionally performs an act which creates a substantial risk of bodily injury to another person while armed with a deadly weapon commits Criminal Recklessness. I.C. 35–42–2–2(b). A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of the harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I.C. 35–41–2–2(c).

The facts most favorable to the verdict reveal that Clark fired a loaded handgun twice into a room occupied by at least four people, and once outside the house. The third shot went through the window of Brykeesya's bedroom. Thus, the evidence is sufficient to support the conviction for criminal recklessness.

12. In this regard we cannot speculate as to whether Clark will be retried upon the attempted murder charge, or whether, in light of the criminal recklessness conviction double jeopardy considerations would prevent such retrial.

13. Clark also contends that his counsel was ineffective for failing to object to the trial court's instructions regarding the attempted murder charge and for failing to object to the manner in which the trial court responded to the notes from the jury. Our reversal upon the charge has rendered these alleged deficiencies moot.

Clark contends, however, that the testimony of the State's witnesses was inconsistent and unbelievable due to the discrepancies regarding the location of the persons who were with Clark when the first shooting took place, the lack of gunshot residue on his hands, and the testimony of the defense witnesses that strangers ran up to the door and fired the shots.

We reiterate that in reviewing the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of witnesses. *Smedley, supra.* Here, both Dorisene and Jackson testified that the persons who were with Clark were between the storm door and the front door attempting to shove their way inside the apartment when the first shooting took place. Moreover, although Clark's hands displayed no traces of gunshot residue, the evidence showed that the bags the police had placed on Clark's hands to preserve any residue were ripped open prior to the chemical test.

Clark also challenges the evidence on grounds that Jackson's struggle with him precipitated the firing of the gun. However, Jackson was attempting to shut the apartment door when Clark jammed the gun between the door and the frame. Even assuming that Jackson's subsequent act of shoving Clark's arm toward the ceiling caused the gun to fire, Clark fired at least two more shots, one inside the apartment and one outside the apartment, without further contact from Jackson. Thus, the evidence is sufficient to support the conviction for criminal recklessness.

Clark also alleges that the State failed to prove two prior unrelated felony convictions to support the habitual offender finding. He asserts that the State demonstrated only the arrest and sentencing dates, but not the dates of conviction.

 To sustain a sentence under the habitual offender statute, the State must demonstrate that the defendant was twice convicted and twice sentenced for felonies. *See Clark v. State* (1985) Ind., 480 N.E.2d 555, 560. To meet the requirement that the previous felony convictions must be unrelated, the State must show that the commission of the second offense was subsequent to the sentence upon the first offense. *Id.* Inclusion of the arrest dates and the sentencing dates in the present case amply meets the requirement. Thus, the evidence is sufficient to support the habitual offender determination.

The conviction upon the charge of attempted murder is reversed. In all other respects, the judgment is affirmed. The cause is remanded for further proceedings not inconsistent with this opinion.

STATON, J., concurs.

HOFFMAN, J., dissents in part and concurs in part and files separate opinion.

HOFFMAN, Judge, dissenting in part and concurring in part.

I cannot agree with the majority that the jury was improperly instructed on the elements of attempted murder, and therefore, I respectfully dissent.

The instructions given in this case are not "substantially identical" to those given in *Brown v. State* (1992), Ind.App., 587 N.E.2d 693, as asserted by the majority. In fact, they differ in one important respect. The instructions given in this case are all correct. They were taken directly from our statutes defining murder, attempt, knowingly, and intentionally. *See* IND.CODE § 35–42–1–1(1) (1991 Supp.); IND.CODE § 35–41–5–1 (1988 Ed.); IND.CODE § 35–41–2–2(a) & (b) (1988 Ed.). Therefore, there was no error in these instructions, much less fundamental error.

The instruction given by the Court in *Brown, supra,* providing the elements that the State must prove to convict defendant of attempted murder, excluded the specific intent to kill element. The instruction simply told the jury that it could convict defendant if the State proved that "[t]he Defendant 1. Knowingly 2. Engaged in conduct that constituted a substantial step to accomplish 3. The crime of Murder." There was no such erroneous instruction given in this case.

Likewise, this case differs from *Smith v. State* (1984), Ind., 459 N.E.2d 355, and *Abdul-Wadood v. State* (1988), Ind., 521 N.E.2d 1299, in which the jury was not

informed of the specific intent to commit murder.

The jury in this case was informed that the State had to prove the defendant acted with intent to kill. Then, it was informed as to what attempt meant. While it certainly would be better practice to have an additional instruction combining these two definitions to set out all the elements the State must prove for attempted murder, the absence of such an instruction is not error. The jury was advised of the elements that the State had to prove; therefore, no error is present.

The appellant also raised the issue of whether there was sufficient evidence to sustain the conviction for attempted murder. The intent to commit murder may be inferred from the deliberate use of a deadly weapon in manner reasonably likely to cause death or great bodily harm. *Allen v. State* (1991), Ind., 575 N.E.2d 615, 616. Here, the evidence showed that appellant pulled a gun when Jackson was attempting to shut the door to the apartment and that he then jammed the gun between the door and the frame. The evidence also showed that, while Jackson was at the door, appellant fired two shots inside the apartment, the first shot hitting the ceiling only because Jackson had pushed appellant's arm in that direction. Clearly, appellant's acts constituted substantial evidence from which the jury could infer, beyond a reasonable doubt, that appellant intended to kill Jackson.

Therefore, I vote to affirm appellant's attempted murder conviction. Since the trial court failed to specify whether the habitual offender determination enhances the sentence on Count I, attempted murder, a Class A felony, or on Count II, criminal recklessness, a Class D felony, I would remand this cause for such specification by the trial court.

I concur with the majority in all other respects.