Charles J. DesJARDINS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 31A01–0002–CR–60.

Court of Appeals of Indiana.

July 3, 2001.

Rehearing Denied August 22, 2001.

Bruce A. Brightwell, Louisville, KY, Bart M. Betteau, New Albany, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Charles J. DesJardins appeals his conviction of two counts of Child Molesting as Class A Felonies,[1] and one count of Child Exploitation as a Class D Felony.[2] Specifically, DesJardins alleges that the trial court erred by refusing to allow him to play four hours of videotape for the jury in addition to the four minutes already played by the State. He also argues the trial court improperly responded to a question by the jury, thereby coercing it into a guilty verdict. We find that the trial court did not abuse its discretion in denying DesJardins' attempt to show the jury four hours of videotape and that the trial court properly answered the jury's question.

### Facts and Procedural History

In January 1998, Kathy Doll, DesJardins' wife, found videotapes in their bedroom closet. She watched the videotapes and discovered that there were two segments where DesJardins placed his penis inside or on the mouth of a blindfolded girl. In January of 1998, the girl on the videotape was seven years old.

On the same day, Doll gave the videotapes to Indiana State Police Detective Sergeant Sean Clemons. Later that day, Detective Sergeant Andy Squire, also of the Indiana State Police, spoke to DesJardins at his home. Detective Squire advised DesJardins of his rights and then questioned him concerning the videotapes. DesJardins admitted to Detective Squire that he made the videotapes for his own private use. He also admitted that on two separate days about eighteen months earlier, he placed his penis in the mouth of the same girl.

DesJardins was arrested and charged with two counts of Child Molesting as Class A felonies, and one count of Child Exploitation as a Class D felony. DesJar-

---

1. Ind.Code § 35–42–4–3.

2. Ind.Code § 35–42–4–4.

dins timely filed a Notice Of Defense Of Mental Disease Or Defect. The court held a jury trial. After a few hours of deliberations on the first day, the jury asked the court "[a]re we here until we decide? Or at what point can we go home?" Record at 2035. The trial court informed the jury "you should take the time you believe is necessary to deliberate. If the hour grows late and you believe additional deliberations are necessary the Court will provide hotel accommodations for you." Record at 2038. The jury came back that evening and found DesJardins guilty of each count. The court sentenced DesJardins to two forty year sentences on each child molesting count to be served consecutively to each other and a two year sentence on the child exploitation count to be served concurrently with the child molesting counts. DesJardins then initiated this appeal.

**Discussion and Decision**

DesJardins argues that the trial court erred when it would not allow him to show the jury the entire two videotapes that his wife found. The trial court allowed the jury to view the portions of the tapes that showed DesJardins with the girl. These portions consisted of about four minutes of tape and were the only portions of the two tapes that showed both DesJardins and the girl. DesJardins alleges that the rest of the tapes are crucial to his insanity defense because the other scenes would clearly show the jury that he was insane at the time of the crimes.

DesJardins also contends that the trial court improperly answered a jury question at the end of the first day of deliberations. He alleges that the trial court coerced the jury into a guilty verdict by improperly answering its question concerning how long it would have to deliberate that evening. He argues that the jury was deadlocked, and thus, the court should have reread all of the final instructions to the jury. We address each argument in turn.

## I. Admissibility of Videotapes

■ DesJardins contends that the trial court erred by not allowing him to show the jury all four hours of video. He argues that once the State admitted the four minutes of video that showed DesJardins with the girl, he should have been allowed to show the remaining four hours under Indiana Rule of Evidence 106 and the doctrine of completeness. He alleges that, in fairness, the jury should see all of the tapes because they are crucial to his insanity defense and to showing whether he had the requisite intent to commit the crimes. He argues that he could neither put forth his insanity defense nor effectively cross-examine the State's witnesses on that issue without the admission of the tapes.

Evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Larry v. State,* 716 N.E.2d 79, 80 (Ind.Ct.App.1999). With this standard of review in mind, we examine the trial court's decision not to admit the remaining portions of the videotapes.

■ Indiana has a common law doctrine of completeness. Under this doctrine, when one party admits a portion of a document or recorded statement into evidence, the opposing party can place the remainder of the statement into evidence. *Stanage v. State,* 674 N.E.2d 214, 215–16 (Ind.Ct.App.1996) (citing *Evans v. State,* 643 N.E.2d 877, 881 (Ind.1994), *reh'g denied* ). The omitted portions are still subject to the normal rules of admissibility and must be material, relevant and not prejudicial. *Id.* The doctrine of completeness has been incorporated into Indiana Rule of Evidence 106. *Id.*

■ Rule 106 states that:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

This rule is designed to avoid misleading impressions caused by taking a statement out of its proper context or conveying a distorted picture by introducing only certain parts. *See Lieberenz v. State*, 717 N.E.2d 1242, 1248 (Ind.Ct.App.1999) (citing 13B R. MILLER, JR., INDIANA PRACTICE § 106 at 23 (1995 & Supp. 1998)), *trans. denied*. The rule may be invoked to admit the remaining portions of a statement to explain the portion being offered for admission, place the admitted portion in context, avoid misleading the trier-of-fact, or ensure a fair and impartial understanding of the admitted portion. *Id.*

Under the doctrine of completeness, DesJardins attempted to introduce the remaining portions of the videotapes into evidence. The videotapes are a collage of clips depicting sexual and nonsexual matters. The sexual clips predominantly show a male engaging in bizarre masturbating conduct. Intermixed in these scenes are nonsexual scenes such as people in public places, news reports on television, regular television shows, pictures of a child's birthday party, weather reports and many minutes of a blank, snowy screen.

DesJardins attempted to show the tapes at various times throughout the State's case including during the cross-examination of the State's witnesses, Detective Clemons and Dr. Thomas Holsworth. Each time DesJardins cited Rule 106 as his basis for admitting the tape, claiming that the entire videotapes needed to be shown in fairness to allow the jury to put the four minutes of tape in proper context. He also alleged that the videotapes would prove that he was insane and therefore, he could not have had the requisite intent needed for the crimes with which he was charged.

Initially, we note that Rule 106 applies to writings or recorded statements or parts thereof. Writings and recorded statements are defined as consisting of "letters, words, sounds or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation." Ind. Evidence Rule 1001(1). In contrast, videotapes, photographs, and x-ray films are defined as photographs by Indiana Rule of Evidence 1001(2). Therefore, by definition Rule 106 does not apply to the admission of videotapes.

Also, the party invoking Rule 106—here DesJardins—must identify the precise evidence to be admitted. 12 R. MILLER, JR., INDIANA PRACTICE § 106 at 122 (1995). For example, a demand that the "entire deposition" be admitted when an adversary has offered portions is insufficient. *See Paul Arpin Van Lines, Inc. v. Universal Transp. Servs., Inc.* 988 F.2d 288, 294 (1st Cir.1993) (stating that a district court judge is not obligated to go through the entire deposition of a witness who had testified at the trial to determine if there are conflicts in the deposition testimony because this is the work of the lawyers in our system). Similarly, the court in this case has no obligation to go through the four hours of videotape to choose only the portions that seem relevant to the insanity defense and to omit the nonsexual and blank screen portions.

Nevertheless, we need to be extremely cautious in criminal cases where the defendant chooses not to testify, as in this case, to deny the admission of relevant evidence under Rule 106 because it might otherwise never be admitted. *United States v.*

*Walker*, 652 F.2d 708, 713 (7th Cir.1981). Essentially, Rule 106 addresses the order of proof and when the defendant chooses not to testify, there is more at stake than merely the order of proof. *Id.* But, the order of proof is also controlled by Indiana Rule of Evidence 611(a). Under Rule 611 "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence...." Ind. Evidence Rule 611(a). Therefore, Rule 611 allowed the trial court to admit the videotapes in their entireties during the State's case in chief.

However, admission under Rule 611 still requires a showing of relevance. To be relevant, evidence must have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401; *See also Williams v. State*, 741 N.E.2d 1209, 1211 (Ind.2001). Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Indiana Rule of Evidence 403 states that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Therefore, we must balance the probative value of the videotapes against the possibility of the tapes misleading the jury, confusing the issues, causing undue delay, or needless presentation of cumulative evidence.

In this case, the probative value of these videotapes is solely based upon how well they portray whether DesJardins was insane. The insanity defense requires that DesJardins show he was insane at the time of the crimes. Ind.Code § 35–41–3–5. Thus, evidence showing his mental state near the time of the crime is relevant to his defense of insanity. But, we do not know whether the scenes in these videotapes were made near the time of the commission of the charged crimes. The tapes do not contain any dates or timing devices to show when the various segments were recorded. Additionally, there is no evidence in the record disclosing when these tapes were made. Thus, it is not clear if these tapes would have helped show DesJardins' mental state at the time of the commission of the crimes. In light of our inability to discover when these tapes were made, the tapes are of modest probative value. Furthermore, when weighed against the dangers of misleading the jury and delaying the trial, we hold that the trial court did not abuse its discretion in denying DesJardins attempts to show the rest of the tapes.

## II. Jury Coercion

DesJardins also claims that the trial court coerced the jury into a guilty verdict with its answer to the jury's question at the end of the first day of deliberation. The jury asked the court "[a]re we here until we decide? Or at what point can we go home?" Record at 2035. The trial court informed the jury "[y]ou should take the time you believe is necessary to deliberate. If the hour grows late and you believe additional deliberations are necessary the Court will provide hotel accommodations for you." Record at 2038. DesJardins argues that the court's answer could have been interpreted to mean that it would prefer a verdict immediately. DesJardins contends that the jury's question should have been treated as an indication of a deadlocked jury, and thus, the court was mandated to reread all of the jury instructions, not just one instruction.

DesJardins argues that this case is similar to *Bailey v. State*, 669 N.E.2d 972 (Ind.1996). In *Bailey*, the jury sent a question to the judge asking "what happens if we cannot come to a unanimous decision this evening?" *Id.* The trial court interpreted this to mean that the jury was deadlocked, so it called the jury back into court and reread one of the final instructions. Thus, the court gave the jury an "Allen charge," which is a supplemental instruction to an apparently deadlocked jury that it should reach a verdict. *Fultz v. State*, 473 N.E.2d 624, 629 (Ind.Ct.App. 1985), *reh'g denied, trans. denied.* The Indiana Supreme Court held that because the jury was deadlocked, the trial court was mandated to reread all of the final instructions to the jury. *Bailey*, 669 N.E.2d at 975–76. However, in his concurring opinion, Chief Justice Shepherd stated that:

> [T]he application of these rules appears awkward in this case because the jury's question to the court seems like a request for information and not a declaration that the jurors were deadlocked. The trial judge interpreted the question as an indication of deadlock, however, and it is possible that she was right. If so, as the Court's opinion indicates, the decision to give an "Allen charge" was error.

*Id.* at 976. This indicated that had the trial judge interpreted the question differently, her instruction to the jury would not have been erroneous.

We faced a similar issue in the case of *Clark v. State*, 597 N.E.2d 4 (Ind.Ct.App. 1992), *reh'g denied, trans. denied.* In *Clark*, the jury sent to the trial court the question "[h]ow long are we given to deliberate?" *Id.* at 7. The court responded to the question with "as long as it takes. There is no set time limit." *Id.* This court held that "Allen charges" must be careful-ly scrutinized to assure that a deadlocked jury is not coerced into making a decision. *Id.* at 7–8. However, this danger is not present when the trial court has no reason to believe that the jury is deadlocked. *Id.* We held that the question standing alone only expressed the jury's inability to agree upon a verdict at that time, not that it expected to be deadlocked. *Id.* at 8. Therefore, we held the court did not err in giving its instruction to the jury. *Id.*

Similarly, in this case, the jury's question "[a]re we here until we decide? Or at what point can we go home?" does not lead us to believe that it would be unable to reach a verdict. Evidently, the trial court thought this was simply the jury inquiring as to whether it could leave and reconvene in the morning or whether it had to stay that night until it reached a verdict. This interpretation is further supported by the fact that the court sent the jury home by 5:00 in the evening every other day during the trial. The jury sent this question to the trial court around 6:00 in the evening. Therefore, similar to *Clark*, we find no evidence that the jury was deadlocked. Thus the trial court did not err in giving its instruction.

Judgment affirmed.

ROBB, J., and BROOK, J., concur.